(May 19, 1964)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. JOSEPH LA FOUNTAIN et al., Appellants.— Appeal from a judgment of the County Court of St. Lawrence County rendered August 8, 1963, upon a verdict convicting the defendants of a crime described in the indictment as "wilful interference with the proper administration of public assistance and care, in violation of § 145 of the Social Welfare Law". On January 30, 1963, and for several months prior thereto the appellants and their families were receiving welfare payments under various programs. La Fountain was receiving home relief, his family aid to dependent children and the other defendants and their families were under a Federal-State program known as Temporary Aid to Dependent Children. The indictment charged that appellants, while employed on a special work relief project by St. Lawrence County, left their job in the Town of Pierrepont on January 30, 1963, and refused to work causing the project to be discontinued and that they interfered with the proper administration of public assistance and care by increasing the welfare cost to said county for the support of their families in violation of section 145 of the Social Welfare Law. In accordance with provisions of the United States Social Security Act (U. S. Code, tit. 42, §§ 603, 607) and the New York State Social Welfare Law, an agreement establishing a work-relief program was entered into in April, 1962 between the County of St. Lawrence and the Town of Pierrepont. Under this program the Federal Government pays slightly more than one half of the cost of assistance to persons receiving temporary aid to dependent children and the remainder is shared equally by the State and the county. Section 164 of the Social Welfare Law provides that "employable persons receiving home relief may be required to perform such work as may be assigned to them by the public welfare official furnishing such home relief" (subd. 1) and that this provision is "made applicable to employable parents receiving aid to dependent children" (subd. 5). The Town of Pierrepont project started in May, 1962 and the defendants La Fountain, Perry and Woodard were immediately assigned to work. Snyder followed on September 1, 1962, and Swinyer started to work on January 8, 1963. They performed various tasks, including brush cutting, building fences, working on blacktop roads, building shoulders on new roads and cleaning up cemeteries. They worked continuously until the morning of January 30, 1963. There were no complaints about their work and they were described as good workers by their foreman. On the morning of January 30, 1963, the appellants were picked up as usual by their foreman to be taken to work. It was then 12 or 15 degrees above zero and when the foreman told them that the assigned task for that day was to cut brush along Coleman Road, a secondary, unpaved county road, the defendants said that they were willing to perform any work other than to cut brush in deep snow which was knee deep in most

places and up to one's waist in other places. The foreman then took the men to the Town Superintendent of Highways and to the Town Supervisor. Both were told of the defendants' refusal to cut the brush. Whereupon they were taken home and never ordered to report for work again. During the same day a case worker reported the appellants' refusal to the District Attorney and on February 25, 1963, she filed an information against each of them. Two affidavits sworn to by the Town Superintendent and Town Supervisor were filed with same Justice of the Peace on February 1, 1963. On March 1, 1963, all defendants, except La Fountain who had been on home relief right along, were transferred to home relief because their refusal to work made them ineligible for temporary aid to dependent children to which the Federal Government contributed more than half of the cost. This resulted in increased cost to St. Lawrence County. After a jury trial all five defendants were convicted. La Fountain was sentenced to eight months in jail and the other four were given four months in jail with Woodward's sentence being suspended. We believe that the conviction is unsupported by the evidence. Assuming *arguendo* that the indictment can be construed as sufficiently charging " any wilful act designed to interfere with the proper administration of public assistance and care" (Social Welfare Law, § 145), there is no adequate proof that any act of the defendants was "wilful" and there is not a scintilla of evidence that any act of the defendants was "designed" to accomplish such interference. They did not leave the job and refuse to work. They merely refused to work in the deep snow that day and were never again asked to work although all indicated that they were willing to do other work. In fact, Swinyer and Woodward, specifically requested that they be put back to work and Perry and Snyder told the Welfare Department that they had never refused to work. For many months, these men had done satisfactory work and were called good workers. Admittedly the morning of January 30, 1963, was a cold one and the proof is unchallenged that the snow was knee deep and waist high in the work area. Clearly, the record indicates no "wilful" act within the meaning of section 145 and none, certainly, "designed" to interfere with welfare administration. Judgment reversed, on the law and the facts, and indictment dismissed. Gibson, P. J., Reynolds, Taylor, Aulisi and Hamm, JJ., concur.